1

2

3

4

5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

6   MARIO ARRIAGA,

7                                   Plaintiff,

8          v.

9   CAROLYN W. COLVIN, Acting
    Commissioner of Social Security,

10

11                                 Defendant.

Case No. 3:15-cv-05815-KLS

ORDER AFFIRMING DEFENDANT'S
DECISION TO DENY BENEFITS

12

13

14

15          Plaintiff has brought this matter for judicial review of defendant's denial of his

16   application for disability insurance benefits. The parties have consented to have this matter heard

17   by the undersigned Magistrate Judge.[1] For the reasons set forth below, the Court finds

18   defendant's decision to deny benefits should be affirmed.

19

20                    FACTUAL AND PROCEDURAL HISTORY

21          Plaintiff applied for disability insurance benefits alleging he became disabled beginning

22   December 5, 2005.[2] His application was denied on initial administrative review and on

23   reconsideration.[3] At a hearing held before an Administrative Law Judge (ALJ), plaintiff appeared

24

25   _____
     [1] 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73; Local Rule MJR 13.

26   [2] Dkt. 10, Administrative Record (AR), 1167.

     [3] AR 1167.

ORDER - 1

and testified, as did a vocational expert.[4] In a written decision, the ALJ determined that plaintiff could perform other jobs existing in significant numbers in the national economy, and therefore that he was not disabled.[5] That decision was reversed by this Court, which remanded this matter for further administrative proceedings.[6]

A second hearing was held on remand before a different ALJ, at which plaintiff appeared and testified, as did a different vocational expert and medical expert Eric Schmitter, M.D.[7] In a written decision, that ALJ also found plaintiff could perform other jobs existing in significant numbers in the national economy and therefore was not disabled.[8] It does not appear the Appeals Council assumed jurisdiction of this case, thus making the ALJ's decision the final decision of the Commissioner, which plaintiff then appealed to this Court.[9] The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues the ALJ's decision should be reversed and remanded for an award of benefits, or in the alternative for further administrative proceedings, because the ALJ erred:

    (1)    in finding plaintiff's nerve impingement and headaches were not severe impairments;

    (2)    in finding plaintiff's impairments did not meet or equal a listed impairment;

    (3)    in evaluating the medical evidence in the record; and

    (4)    in assessing plaintiff's residual functional capacity (RFC).

For the reasons set forth below, the Court disagrees that the ALJ erred as alleged, and therefore

---

[4] AR 35-72.

[5] AR 18-28.

[6] AR 1275-83.

[7] AR 1195-1242.

[8] AR 1167-86.

[9] 20 C.F.R. § 404.984; Dkt. 3.

ORDER - 2

1    finds that the ALJ's decision should be affirmed.

2                                    DISCUSSION

3            The Commissioner's determination that a claimant is not disabled must be upheld if the

4    "proper legal standards" have been applied, and the "substantial evidence in the record as a

5    whole supports" that determination.[10] "A decision supported by substantial evidence nevertheless

6    will be set aside if the proper legal standards were not applied in weighing the evidence and

7    making the decision."[11] Substantial evidence is "such relevant evidence as a reasonable mind

8    might accept as adequate to support a conclusion."[12] The Commissioner's findings will be

9    upheld "if supported by inferences reasonably drawn from the record."[13]

10

11           Substantial evidence requires the Court to determine whether the Commissioner's

12   determination is "supported by more than a scintilla of evidence, although less than a

13   preponderance of the evidence is required."[14] "If the evidence admits of more than one rational

14   interpretation," that decision must be upheld.[15] That is, "[w]here there is conflicting evidence

15   sufficient to support either outcome," the Court "must affirm the decision actually made."[16]

16

17   I.      The ALJ's Findings at Step Two

18           Defendant employs a five-step "sequential evaluation process" to determine whether a

19   claimant is disabled.[17] If the claimant is found disabled or not disabled at any particular step

20

21   _____

     [10] *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359
     F.3d 1190, 1193 (9th Cir. 2004); *Carr v. Sullivan*, 772 F.Supp. 522, 525 (E.D. Wash. 1991).

22   [11] *Carr*, 772 F.Supp. at 525 (citing *Brawner v. Sec'y of Health and Human Sers.*, 839 F.2d 432, 433 (9th Cir. 1987)).

23   [12] *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see also Batson*, 359 F.3d at 1193.

     [13] *Batson*, 359 F.3d at 1193.
24
     [14] *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).

25   [15] *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

26   [16] *Allen*, 749 F.2d at 579 (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).

     [17] 20 C.F.R. § 404.1520.

     ORDER - 3

thereof, the disability determination is made at that step, and the sequential evaluation process ends.[18] At step two of the evaluation process, the ALJ must determine if an impairment is "severe."[19] An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities.[20] Basic work activities are those "abilities and aptitudes necessary to do most jobs."[21]

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work."[22] Plaintiff has the burden of proving that his "impairments or their symptoms affect [his] ability to perform basic work activities."[23] The step two inquiry described above, however, is a *de minimis* screening device used to dispose of groundless claims.[24]

In terms of plaintiff's nerve impingement and headaches, the ALJ found:

The claimant's mild ulnar or cervical nerve impingement or irritation is not a "severe" impairment. An examining neurologist noted unremarkable related clinical findings (Ex. 30F). The medical expert testified that this impairment did not cause more than minimal physical limitations based on his review of the medical evidence of record and was not likely carpal tunnel syndrome or cervical radiculopathy, although there was probably some nerve impingement. The record fails to establish that the impairment has a more than minimal effect on the claimant's ability to perform basic work activities and is, therefore, not "severe" under the regulations.

The record contains occasional complaints of headaches (Ex. 4F, 15F, 29F, 31F, 37F), that the claimant at one point related to medication he was taking (Ex. 30F/3). At times he has denied any headaches (Ex. 12F/79, 14F/5). It

---

[18] *Id.*

[19] 20 C.F.R. § 404.1520.

[20] 20 C.F.R. § 404.1520(a)(4)(iii); Social Security Ruling (SSR) 96-3p, 1996 WL 374181, at *1.

[21] 20 C.F.R. § 404.1521(b); SSR 85- 28, 1985 WL 56856, at *3.

[22] SSR 85-28, 1985 WL 56856, at *3; *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir.1988).

[23] *Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2001); *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998).

[24] *Smolen*, 80 F.3d at 1290.

ORDER - 4

> appears the claimant's headaches are intermittent, do not cause more than
> minimal limitation on an ongoing basis, and are not severe.[25]

Plaintiff argues the ALJ erred in so finding, asserting the ALJ failed to consider other evidence in the medical record that would support a determination of severity. But the medical records plaintiff cites do not themselves show that his ability to perform basic work activities is actually impacted thereby.[26] Nor is plaintiff's own testimony sufficient to establish severity at step two.[27] Accordingly, the ALJ did not err here.

II.      The ALJ's Step Three Determination

At step three of the sequential disability evaluation process, the ALJ must evaluate the claimant's impairments to see if they meet or medically equal any of the impairments set forth in the Listings.[28] If any of the claimant's impairments meet or medically equal a Listing, he or she is deemed disabled.[29] The burden of proof is on the claimant to establish he or she meets or equals a Listing.[30] "A generalized assertion of functional problems," however, "is not enough to establish disability at step three."[31]

A mental or physical impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques."[32] It must be established by medical evidence "consisting of signs,

---

[25] AR 1171.

[26] Dkt. 12, p 6 (citing AR 312, 592, 676, 755, 832, 841, 1124, 1132-33, 1492, 1500).

[27] *Id.* at p. 7 (citing AR 44-46).

[28] 20 C.F. R. Part 404, Subpart P, Appendix 1;  20 C.F.R § 404.1520(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

[29] *Id.*

[30] *Tacket*, 180 F.3d at 1098.

[31] *Id.* at 1100 (citing 20 C.F.R. § 404.1526).

[32] 20 C.F.R. § 404.1508.

ORDER - 5

symptoms, and laboratory findings" alone.[33] An impairment meets a Listing "only when it manifests the specific findings described in the set of medical criteria for that listed impairment."[34]

An impairment, or combination of impairments, equals a listed impairment "only if the medical findings (defined as a set of symptoms, signs, and laboratory findings) are at least equivalent in severity to the set of medical findings for the listed impairment."[35] "For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment."[36] However, "symptoms alone" will not justify a finding of equivalence.[37]

In addition, the ALJ "is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence."[38] The ALJ also need not "state why a claimant failed to satisfy every different section of the listing of impairments."[39] This is particularly true where, as noted above, the claimant has failed to set forth any reasons as to why the Listing criteria have been met or equaled.[40]

In terms of his step three determination, the ALJ stated:

Particular attention was given to listing 1.02 for major dysfunction of a joint.

---

[33] *Id.*; *see also* SSR 96-8p, 1996 WL 374184, at *2.

[34] SSR 83-19, 1983 WL 31248, at *2.

[35] *Id.*

[36] *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (emphasis in original).

[37] *Id.*

[38] *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

[39] *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990).

[40] *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001).

ORDER - 6

> However, the available medical evidence did not demonstrate the specified criteria required of the listing. Specifically, the listing requires gross anatomical deformity and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and finding on appropriate medically acceptable imaging of joint space narrowing, bony destruction or ankylosis of the affected joint. The listing also requires involvement of one major peripheral joint resulting in inability to perform fine and gross movements effectively as defined in 1.00B2c. In this case, the evidence does not demonstrate that the claimant has the degree of difficulty in performing fine and gross movements as defined in 1.00B2.[41]

Plaintiff argues the ALJ erred in finding he does not have an impairment that meets Listing 1.02, asserting that the medical evidence clearly shows he experiences numbness in his fingers. But as the ALJ points out, this is insufficient to establishing Listing-level severity. Rather, plaintiff also must establish an inability to perform fine and gross movements. He has not done so. Nor did the ALJ err in failing to properly consider whether plaintiff's impairments equaled Listing 1.02. As noted above, an ALJ need not compare a claimant's impairments to any Listing in determining equivalency, unless the claimant presents evidence in an effort to establish it. Again, plaintiff has not done so. Therefore, here too the ALJ did not err.

III.     The ALJ's RFC Assessment

A claimant's RFC assessment is used at step four of the sequential disability evaluation process to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work.[42] It is what the claimant "can still do despite his or her limitations."[43] A claimant's RFC is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record.[44] However, an inability to work must

---

[41] AR 1171.

[42] SSR 96-8p, 1996 WL 374184 *2.

[43] *Id.*

[44] *Id.*

ORDER - 7

result from the claimant's "physical or mental impairment(s)."[45] Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments."[46] In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence."[47]

The ALJ found that if plaintiff had the RFC:

> **to perform medium work . . . that does not require more than frequent reaching, handling, or fingering with the right upper extremity; that does not require more than occasional working over the shoulder with the right upper extremity; that does not require climbing of ladders, ropes, or scaffolds; that does not require more than frequent balancing; that does not require more than occasional kneeling, crawling, crouching or stooping; and that consists of simple tasks or known complex detailed tasks.**[48]

Plaintiff argues this RFC assessment fails to account for the problems he has with his hands. But while plaintiff points to objective findings in the medical record of certain signs and symptoms, those findings again fail to establish the existence of actual work-related limitations.[49] Plaintiff does point to a physical capacities evaluation that assessed work-related limitations, but fails to offer any challenge to the ALJ's reasons for rejecting them.[50]

III.   The ALJ's Evaluation of the Medical Opinion Evidence

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence.[51] Where the evidence is inconclusive, "questions of credibility

---

[45] *Id.*

[46] *Id.*

[47] *Id.* at *7.

[48] AR 1173 (emphasis in original).

[49] Dkt. 12, p. 10 (citing AR 313, 592, 623, 755, 1436).

[50] AR 1183, 1429-30; *Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008); *Paladin Assoc., Inc. v. Montana Power Co.*, 328 F.3d 1145, 1164 (9th Cir. 2003).

ORDER - 8

and resolution of conflicts are functions solely of the [ALJ]."[52] In such situations, "the ALJ's

conclusion must be upheld."[53] Determining whether inconsistencies in the evidence "are material

(or are in fact inconsistencies at all) and whether certain factors are relevant to discount" medical

opinions "falls within this responsibility."[54]

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings

"must be supported by specific, cogent reasons."[55] The ALJ can do this "by setting out a detailed

and thorough summary of the facts and conflicting clinical evidence, stating his interpretation

thereof, and making findings."[56] The ALJ also may draw inferences "logically flowing from the

evidence."[57] Further, the Court itself may draw "specific and legitimate inferences from the

ALJ's opinion."[58]

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted

opinion of either a treating or examining physician.[59] Even when a treating or examining

physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate

reasons that are supported by substantial evidence in the record."[60] However, the ALJ "need not

discuss *all* evidence presented" to him or her.[61] The ALJ must only explain why "significant

---

[51] *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

[52] *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

[53] *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999).

[54] *Id.* at 603.

[55] *Reddick*, 157 F.3d at 725.

[56] *Id.*

[57] *Sample*, 694 F.2d at 642.

[58] *Magallanes v. Bowen*, 881 F.2d 747, 755, (9th Cir. 1989).

[59] *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).

[60] *Id.* at 830-31.

[61] *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original).

probative evidence has been rejected."[62]

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant.[63] On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole."[64] An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician."[65] A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record."[66]

The ALJ relied on the medical expert testimony from Dr. Schmitter in assessing the above RFC and in rejecting other medical opinion evidence in the record that indicated greater functional limitations.[67] Plaintiff argues the ALJ erred in assigning such weight to Dr. Schmitter, given that Dr. Schmitter was not an examining or treating medical source. But while as noted above in general more weight is given to such sources, an ALJ may rely on the opinion of a non-examining physician if it is consistent with other independent evidence in the record. Here, the ALJ explained in detail why he found Dr. Schmitter's opinion to be consistent with the weight of the objective medical evidence.[68] As plaintiff does not challenge any of the ALJ's stated reasons for relying on that opinion – and the Court does not see any basis for finding error with respect

---

[62] *Id.*; *see also Cotter v. Harris*, 642 F.2d 700, 706-07 (3rd Cir. 1981); *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984).

[63] *See Lester*, 81 F.3d at 830.

[64] *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

[65] *Lester*, 81 F.3d at 830-31.

[66] *Id.* at 830-31; *Tonapetyan*, 242 F.3d at 1149.

[67] AR 1179-84.

[68] *Id.*

ORDER - 10

thereto – plaintiff's challenge fails here as well.

<u>CONCLUSION</u>

Based on the foregoing discussion, the Court finds the ALJ properly determined plaintiff to be not disabled. Defendant's decision to deny benefits therefore is AFFIRMED.

DATED this 12th day of May, 2016.

Karen L. Strombom
United States Magistrate Judge

ORDER - 11